UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BECK PAINT & HARDWARE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:17-cv-00307 |
| | ) | |
| THE TRAVELERS INDEMNITY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## SECOND AMENDED COMPLAINT

For its Second Amended Complaint against Defendant, The Travelers Indemnity Company, Plaintiff, Beck Paint & Hardware, Inc., states as follows:

## FACTS

1. At all times material, Plaintiff, Beck Paint & Hardware, Inc. ("Plaintiff" or "Beck"), was and is a citizen of Ohio, whose principal place of business is at 718 E. McMillan St., Cincinnati, OH 45206 ("the Building" or "insured premises").

2. At all times material, Defendant, The Travelers Indemnity Company ("Travelers"), was and is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

3. Venue and subject matter jurisdiction are proper in this Court because the insured premises are in Hamilton County, Ohio and a substantial part of the events or omissions giving rise to Beck's claims occurred in this judicial district. Additionally, Travelers does business and/or transacts business in Hamilton County, Ohio and, therefore, is subject to personal jurisdiction in this judicial district.

4. Travelers, which is licensed to do insurance business in Ohio, issued to Beck in Ohio a commercial property insurance policy, effective March 17, 2016 through March 17, 2017, policy number 680-177J2203 ("the insurance policy", a copy of which is attached hereto as Exhibit A).

5. Under the Businessowners Property Coverage Special Form of the insurance policy, Travelers insured against direct physical loss of or damage to Beck's Building and business personal property at the insured premises caused by a covered cause of loss, including collapse from weight of rain and ensuing damage to both the exterior and interior of the Building structure.

6. Under the Businessowners Property Coverage Special Form of the insurance policy, Travelers agreed to replace damaged or destroyed real and business personal property with like kind and quality.

7. On or about August 28, 2016, while the insurance policy was in full force and effect, the insured premises was damaged by collapse from weight of rain and ensuing interior water damage ("the collapse loss").

8. Beck duly submitted a claim to Travelers under the insurance policy for its loss and damage from this covered collapse peril.

9. Beck has substantially performed all conditions required by the insurance policy, including giving Travelers prompt notice of the collapse loss, paying the premium for the coverages afforded by the insurance policy and endorsements thereto, and otherwise cooperating with Travelers in its claim investigation.

10. As a result, it is Travelers' duty to pay Beck for all its loss and damage, pursuant to the terms and conditions of the insurance policy sustained as a result of this covered collapse loss.

11. Although requested to do so, Travelers failed, refused, and continues to fail and refuse to pay Beck for all its covered collapse and ensuing losses and damages as provided for in the insurance policy.

## COUNT I
### (Breach of Contract)

12. Beck re-alleges paragraphs 1 through 11 of the Facts as paragraph 12 of Count I of the Second Amended Complaint.

13. Travelers' failure to pay Beck for all its insured loss and damage resulting from the covered collapse loss is a breach of the insurance policy.

14. This breach of the insurance policy was and is the direct and proximate cause of damage to Beck in an amount in excess of $75,000.

WHEREFORE, Plaintiff, Beck Paint & Hardware, Inc., prays that this Court enter judgment in its favor and against Defendant, The Travelers Indemnity Company, in an amount in excess of $75,000, plus prejudgment interest and costs.

## COUNT II
### (Bad Faith)

15. Beck re-alleges paragraphs 1 through 14 of Count I of the Second Amended Complaint as paragraph 15 of Count II of the Second Amended Complaint.

16. Travelers was notified of the collapse loss on August 29, 2016, the day after the August 28th rain storm.

17. On September 13, 2016, Travelers' Property Claim Representative, John Maxey, inspected the insured premises with Lon Pitre, Beck's public insurance adjuster.

18. Despite having yet to see the collapse loss, Mr. Maxey brought with him to the September 13th inspection page 4 of the Businessowners Property Coverage Special Form of the Travelers insurance policy, which sets forth a limitation for damage to the interior of a building caused by rain.

19. On September 15, 2016, Mr. Pitre requested from Maxey a certified copy of the Beck insurance policy.

20. On September 21, 2016, Wesley Gerbick, an engineer with Nederveld, Inc., issued a Report to Travelers regarding the cause of the collapse loss, a copy of which is attached as Exhibit B.

21. On September 30, 2016, Travelers sent the Nederveld Report to Mr. Pitre.

22. On October 20, 2016, Steve Verssen, an engineer with Vertech Inspections, Inc., issued a Report to Beck regarding the cause of the collapse loss, a copy of which is attached as Exhibit C.

23. On October 21, 2016, Mr. Pitre sent the Verssen Report to Mr. Maxey.

24. On November 18, 2016, Mr. Gerbick issued a Supplemental Report to Travelers addressing the Verssen report, a copy of which is attached as Exhibit D.

25. On November 23, 2016, Travelers sent the Nederveld Supplemental Report to Mr. Pitre.

26. On December 7, 2016, Travelers sent Mr. Pitre a letter, a copy of which is attached as Exhibit E.

27. Travelers acknowledged in the December 7th letter coverage for a portion of the collapse loss.

28. The December 7th letter included an estimate for the cost to repair/replace the damage to the Building, a copy of which estimate is attached as Exhibit F.

29. The December 7th letter included a check payable to Beck for $60,098.07, a copy of which check is attached as Exhibit G.

30. The payment represented the actual cash value of the damage to the Building as determined by Travelers, actual cash value defined as the cost to repair/replace the damage less a deduction for depreciation.

31. Travelers also disclaimed coverage in the December 7th letter for a portion of the collapse loss; specifically, interior water damage ensuing or resulting from the collapse.

32. On January 3, 2017, Mr. Verssen issued a Supplemental Report to Beck addressing the Nederveld Report, a copy of which is attached as Exhibit H.

33. On January 9, 2017, Mr. Pitre sent the Verssen Supplemental Report to Mr. Maxey.

34. On January 18, 2017, Mr. Pitre sent an email to Mr. Maxey requesting a status on the Beck claim.

35. On January 20, 2017, Mr. Maxey responded to the January 18th email, advising that the Verssen Supplemental Report had been sent to Nederveld for review.

36. On January 23, 2107, Mr. Pitre again requested from Mr. Maxey a certified copy of the Beck insurance policy.

37. On January 25, 2107, Travelers advised Mr. Pitre that it wanted to re-inspect the insured premises with Nederveld.

38. On February 8, 2017, the re-inspection took place.

39. On April 4, 2017, Beck filed suit against Travelers.

40. Ohio law required Travelers to act in good faith in investigating, adjusting, and paying the claim submitted by Beck.

41. At the time of the collapse loss, Travelers' internal claims policies, practices, and procedures included compliance with Ohio rules, regulations, and laws regarding unfair property claim practices.

42. Travelers breached its duty to Beck of good faith in one or more of the following respects in that, without reasonable justification, it:

(a) failed to provide Beck with a certified copy of the policy;

(b) failed to include in its estimate the cost to replace all the roof and ceiling framing damage to the Building caused by the covered collapse loss;

(c) failed to include in its estimate the cost to replace with like kind and quality materials the damage to the Building caused by the covered collapse loss. Examples include: (1) failing to replace with the same tongue and groove sheathing and the same ceiling joists as existed at the time of the loss, (2) replacing the plaster over lath that existed at the time of the loss with drywall, and (3) replacing with a skim coat of drywall instead of a skim coat of plaster that existed at the time of the loss;

(d) failed to include in its estimate the cost for the proper removal of lead-based paint, the removal of which was necessitated by the damage caused by the covered collapse loss;

(e) improperly depreciated labor costs in estimating and paying the actual cash value of the damage to the Building caused by the covered collapse loss;

(f) took excessive depreciation in estimating and paying the actual cash value of the damage to the Building caused by the covered collapse loss;

(g) failed to promptly pay the actual cash value of the damage to the Building caused by the collapse after its engineer determined on September 21, 2016 that the cause of the cause of the collapse was weight of rain, a covered collapse peril under the policy, thus delaying payment by 77 days;

(h) underpaid Beck for the damage to the Building caused by the covered collapse loss;

(i) never communicated with Beck regarding the ensuing interior water damage portion of the claim between February 8, 2017 and April 4, 2017;

(j) disclaimed coverage for the interior water damage based on a pre-conceived notion there was no coverage, as evidenced by its claim representative bringing with him to the September 13th inspection page 4 of the Businessowners Property Coverage Special Form of the Travelers insurance policy, which sets forth a limitation for damage to the interior of a building caused by rain;

(k) disclaimed coverage for interior water damage ensuing from the covered collapse loss based on an unreasonable interpretation of the above limitation in its policy;

(l) retained an engineering firm to investigate the cause of the ensuing interior water damage portion of the claim who is repeatedly used by and is biased in favor of insurers like Travelers;

(m) failed to thoroughly, fairly, and objectively investigate the cause of the ensuing interior water damage, as evidenced by its retained engineering firm (1) ignoring visible evidence that proved openings were created in the roof membrane when the weight of water from the August 28, 2016 rain storm caused stretching and tearing in the membrane, including stretching and tearing in areas around a large skylight, that allowed for water to enter into the interior of the Building and (2) ignoring visible evidence, as well as photographs taken at the time of the loss and statements from Beck representatives, that proved ponding water on the roof never reached a height that allowed it to overflow the curb of the skylight and into the interior of the building, contrary to its opinions in its Reports;

(n) ignored the Verssen Reports, which supported coverage for the ensuing interior water damage, thus (1) failing to treat Beck's interests with equal regard to its own and (2) failing to look for reasons that supported payment of and not just reasons that supported denial of this portion of the claim;

(o) failed to pay for the cost to repair/replace the ensuing interior water damage to the Building and the business personal property;

(p) failed to effectuate a prompt, fair, and equitable settlement of Beck's collapse loss;

(q) forced Beck to retain legal counsel to investigate the collapse loss and subsequent claim and to prosecute this lawsuit to recover all benefits that should have been immediately forthcoming under the insurance policy; and

(r)     failed to be fair, open, and to carry out its part of the bargain under the contract in good faith.

43.     As a direct and proximate cause of Travelers' breach of its duty of good faith claim investigation, adjustment, and payment, which constitutes bad faith, Beck has suffered economic harm, including, but not limited to, attorney fees.

WHEREFORE, Plaintiff, Beck Paint & Hardware, Inc., prays for an award of compensatory damages, reasonable attorneys' fees, litigation costs, damages for emotional distress, punitive damages, and pre-judgment interest, in its favor and against Defendant, The Travelers Indemnity Company.

## JURY DEMAND

Plaintiff hereby demands a trial by jury in all matters triable to a jury in this case.

/s/ Edward Eshoo, Jr.
Edward Eshoo, Jr.
MERLIN LAW GROUP
181 West Madison, Suite 3475
Chicago, Illinois 60602
Telephone: (312) 260-0806
Facsimile: (312) 260-0808
eeshoo@merlinlawgroup.com

Frederic ("Fritz") X. Shadley (0028584)
ULMER & BERNE, LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
Telephone: (513) 698-5014
Facsimile: (513) 698-5015
fshadley@ulmer.com

*Attorneys for Plaintiff, Beck Paint & Hardware, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 4th day of October, 2017, a true and correct copy of the foregoing document was served upon the below counsel of record via the Court's ECF System:

Kurt D. Meyer
GREGORY AND MEYER, P.C.
340 East Big Beaver, Suite 520
Troy, Michigan 48083

/s/ Edward Eshoo, Jr.
Edward Eshoo, Jr.
MERLIN LAW GROUP
181 West Madison, Suite 3475
Chicago, Illinois 60602
Telephone: (312) 260-0806
Facsimile: (312) 260-0808
eeshoo@merlinlawgroup.com